UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                   :

STEVE DRESSLER,                           :

                         Plaintiff,    :

                                   :       10 Civ. 3769 (JPO)

          -against-            :

                                   :      MEMORANDUM AND

NEW YORK CITY DEPARTMENT OF     :         ORDER

EDUCATION,                       :

                      Defendant.  :
-------------------------------------------------------------X

J. PAUL OETKEN, District Judge:

      Plaintiff Steve Dressler initiated this action in the Supreme Court of the State of New York, County of New York, with a complaint dated March 22, 2010.  (Notice of Removal (Dkt. No. 1) ¶ 1.)  Named defendants Department of Education of the City of New York and the City of New York removed the action to this Court on May 7, 2010.  (Notice of Removal.)  On August 16, 2010, both of those defendants were terminated and replaced, in an amended complaint, by the single Defendant, New York City Department of Education ("Defendant" or "DOE").  (Amended Complaint (Dkt. No. 10) ("Compl.").)

      Plaintiff's amended complaint alleges that Defendant (1) discriminated against Plaintiff based on his age in violation of 42 U.S.C. § 1983, the Age Discrimination in Employment Act of 1962 ("ADEA"), the New York Human Rights Law ("NYHRL"), and the New York City Human Rights Law ("NYCHRL"); (2) retaliated against Plaintiff "for engaging in the protected activity of complaining of harassment based on his age and illness in taking medical leave" and discriminated against him "because of his age and illness in taking a medical leave, in that he was subject to a hostile work environment" in violation of 42 U.S.C. § 1983, Title VII of the Civil Rights Act of 1964 ("Title VII"), the NYHRL, and the NYCHRL; and (3) retaliated against Plaintiff in violation of the Family Medical Leave Act ("FMLA").  (Compl. ¶¶ 48-63.)

DOE filed the instant motion for summary judgment on July 22, 2011. (Def.'s Mot. (Dkt. No. 27).) This suit was reassigned to the undersigned on October 6, 2011. (Dkt. No. 34.) For the reasons stated below, Defendant's motion for summary judgment is granted in part and denied in part.

## I.      Background

Unless otherwise indicated, the following facts are undisputed. Plaintiff is a teacher employed by DOE. (Compl. ¶¶ 8-10; Answer to the Amended Complaint (Dkt. No. 13) ("Ans.") ¶ 8).) He was over forty years old at all times relevant to the complaint. (*See* Compl. ¶ 8; Ans. ¶ 8.) After teaching at various schools, Plaintiff was assigned in September 2006 to work at A. Philip Randolph High School ("Randolph") at 443 West 135th St., New York, New York 10031. (Transcript of Plaintiff's Deposition (Dkt. No. 30-2, also available at Dkt. No. 35-1) ("Pl. Tr.") at 25:23-26:2; Ans. ¶ 2.) At Randolph, Plaintiff worked as an Absent Teacher Reserve ("ATR"), filling in for absent teachers on an as-needed basis. (Pl. Tr. at 26:3-11.) Plaintiff was first supervised at Randolph by the school's Assistant Principal of Organization, Mr. Menegatos. (Transcript of Henry Rubio Deposition (Dkt. No. 30-3, also available at Dkt. No. 35-1 at 76-77) ("Rubio Tr.") at 129:10-16.) Henry Rubio became principal of Randolph in November 2006. (*Id.* at 14:9-20.) During the 2006-2007 school year, although Plaintiff's teaching as an ATR was not formally observed by supervisors, his performance received a satisfactory rating. (Pl. Tr. at 27:1-14.)

During the 2007-2008 school year, Plaintiff continued working as an ATR at Randolph. (*Id.* at 28:14-19.) In March 2008, Plaintiff began teaching the math classes of a teacher who had abruptly resigned. (*Id.* at 28:20-29:7.) Plaintiff was then supervised by Rosalie David, who served as Randolph's Assistant Principal for Mathematics from the Spring of 1992 until October 2010. (Transcript of Rosalie David Deposition (Dkt. No. 30-4) ("David Tr.") at 10:12-11:16.)

About one week after Plaintiff took over the math classes in March 2008, he began a leave of absence from Randolph pursuant to the FMLA with a diagnosis of general anxiety disorder; this leave lasted through June 2008.  (Pl. Tr. at 29:7-24, 48:3-50:16.)  Plaintiff received an approval of his leave dated August 21, 2008.  (DOE FMLA Approval (Dkt. No. 35-1 at 71).)  Plaintiff has stated that he took the leave because he found it "very overwhelming with the kids" and because David had said to him "in a very harsh, angry tone, I want to see teaching."  (Pl. Tr. at 29:10-16.)  While on leave and after returning to work, Plaintiff continued to receive his salary and benefits and suffered no diminution in any aspect of his job.  (*Id.* at 65:2-20.)

For the 2007-2008 school year, Principal Rubio gave Plaintiff an unsatisfactory ("U") rating due to excessive absences.  (*Id.* at 53:20-54:13.)  Plaintiff learned of this U rating in August 2008.  (*Id.* at 53:20-23.)  Sometime between September and December 2008, Plaintiff provided Rubio with documentation of the approval of the leave he had taken.  (*Id.* at 55:11-15.)[1] In January 2009, Rubio reversed Plaintiff's U rating and, in February or March, provided Plaintiff a letter apologizing for the administrative error.  (*Id.* at 55:2-21, 63:12-15.)

For the 2008-2009 school year, Plaintiff again worked at Randolph, covering various classes.  (*Id.* at 54:17-23.)  Plaintiff's job performance was rated satisfactory for that school year. (Dkt. No. 29-1.)

Plaintiff continued working as an ATR during the 2009-2010 school year but was specifically assigned to teach a number of math courses.  (Pl. Tr. at 137:21-24; Rubio Tr. at 130:10-20.)  For the first time since beginning work at Randolph, Plaintiff's teaching was observed by a supervisor, Assistant Principal David.  (Pl. Tr. at 43:7-20; observation records,

---

[1] Plaintiff's Counterstatement Pursuant to Local Rule 56.1 (Dkt. No. 36-1) asserts that "Rubio first received notice that Mr. Dressler's FMLA leave had been approved on August 21, 2008, as a copy of his approval was sent to Mr. Dressler and mailed to Principal Rubio . . . ."  (*Id.* ¶ 22.1.)  However, there is no admissible evidence showing that Rubio received notice of the approval before Plaintiff provided it to Rubio between September and December 2008. Indeed, Plaintiff has stated that, before Plaintiff provided Rubio with the documentation, "[h]e didn't have that document."  (Pl. Tr. at 55:14.)

Dkt. Nos. 29-2, 29-3, 29-4, 29-5, 29-6, 29-7, 29-8.)  On October 15, 2009, David conducted a

"walk-through" of one of Plaintiff's classes and noted that Plaintiff "needed questioning

techniques help" and had "no routines."  (October 15, 2009 Observation Report (Dkt. No. 29-2).)

David referred Plaintiff to a teacher mentoring program at City College.  (Pl. Tr. at 111:15-21;

David Tr. at 113:3-114:3.)  However, Plaintiff was ineligible to remain in the program because

he was an ATR.  (Pl. Tr. at 113:5-14.)  An observer from the City College program did visit a

number of Plaintiff's class sessions.  (*Id.* at 112:7-11.)  Plaintiff asserts that the observer gave

him "pointers" but "was generally satisfied with what she saw."  (*Id.* at 112:11-12.)  He further

asserts that the observer advised him, "if you're having difficulties with your present supervisor,

see if you can find another school, another place to work."  (*Id.* at 112:13-16.)

Assistant Principal David observed another of Plaintiff's lessons on November 17, 2009,

and found it unsatisfactory.  (November 17, 2009 Observation Report (Dkt. No. 29-3).)  She

noted, among other things, "little evidence of established routines," "a poorly planned lesson,"

incorrect student work left uncorrected on the board, poor questioning techniques, and

insufficient in-class review of homework.  (*Id.*)  David instructed Plaintiff to observe classes of

two other teachers and to read portions of two pedagogical textbooks.  (*Id.* at 6.)  David

concluded her observation with a promise to "continue to work with you to help you improve

your pedagogue [sic]."  (*Id.*)  Plaintiff asserts that, in fact, David repeatedly refused to help him

improve.  (Pl. Tr. at 111:10-12, 135:25-36:1, 191:6-9.)  He also asserts that the observation

occurred on November 18, 2009.  (*Id.* at 87:23-25.)

David further observed Plaintiff's teaching on February 25, 2010; March 25, 2010; April

19, 2010; and May 7, 2010.  (Observation records, Dkt. Nos. 29-4, 29-5, 29-6, 29-7.)  On each of

these occasions, David noted deficiencies similar to those noted on November 17 or 18, 2009,

and recommended ways for Plaintiff to improve.  (Dkt. Nos. 29-4, 29-5, 29-6, 29-7.)  Plaintiff

complained to Principal Rubio that David's comments from at least one of her observations were unfair and inaccurate. (Rubio Tr. at 128:2-12.) Plaintiff also asserts that David's February 4, 2009, observation improperly came six weeks after the required pre-observation meeting. (Pl. Tr. at 148:11-25.)

Plaintiff disputes the accuracy of David's criticisms of his teaching. Specifically, he disputes that he had no routines, asserting that in fact he followed the routine of "a Do Now, an aim, . . . follow[ing] through with model problems, [and] . . . hav[ing] kids come to the board . . . ." (*Id.* at 92:15-19; *see also id.* at 142:14-18.) He disputes that he was easily distracted. (*Id.* at 96:6-8.) He disputes that he "did not ask questions that assess the students' work, to see if they understand the concepts taught that day"; he asserts that in fact he did "ask summary questions." (*Id.* at 100:11-13, 101:10.) He disputes that he and David "agreed that the next time [she would] observe, the number of students arriving late [would] be no more than six"; he asserts, "I recall that I had made a notation that I never agreed to that." (*Id.* at 106:11-13, 16-17.) He disputes that he did not have charge of his class. (*Id.* at 118:4-6.) He disputes that he "tended to keep calling on the same students in the room"; he asserts that in fact he "would call all students." (*Id.* at 167:17-23.) He disputes that "the vast majority of my questions is procedural." (*Id.* at 169:22-24.)

Plaintiff notes a number of times when he asserts that David harshly criticized his work performance and/or screamed at him about it. (*Id.* at 52:2-8, 114:17-115:14.)

On June 8, 2010, David and Principal Rubio together observed Plaintiff's teaching and found it unsatisfactory for reasons similar to those noted in previous observation evaluations. (June 8, 2010 Observation Report (Dkt. No. 29-8).) David and Rubio made recommendations for Plaintiff's improvement. (*Id.*)

Rubio gave Plaintiff a year-end performance rating of unsatisfactory.  (2009-2010 Annual Professional Performance Review (Dkt. No. 29-9).)  In particular, Rubio noted that Plaintiff's performance was unsatisfactory as to "[p]lanning and preparation of work," "[s]kill in adapting instruction to individual needs and capacities," "[e]ffective use of appropriate methods and techniques," and "[e]xtent of pupil participation in the class and school program."  (*Id.*)  This U rating disqualified Plaintiff from participating in the "Per Session Home Instruction Employment" program.  (Memorandum from Office of Per Session Home Instruction (Dkt. No. 35-1 at 79).)  Plaintiff had taken part in that program in prior years, earning "an average maybe of 2 to 4,000 a year."  (Pl. Tr. at 186:18-25.)

Plaintiff asserts that other teachers near his age were also treated harshly at Randolph. Specifically, he states, "I noticed that . . . senior teachers were having difficulty in the school." (*Id.* at 74:24-75:1.)  He lists teachers he observed having difficulty: Mr. Armetta who was sent to the "rubber room" (a facility for DOE teachers removed from classrooms[2]); Mr. Heartly who "had to leave the school and file a lawsuit of age"; Miss Stenna, a junior teacher; Mr. Self, a senior teacher; and Miss Anderson, a senior teacher.  (Pl. Tr. at 75:2-14.)  Of these teachers, Plaintiff states, "they were my age."  (*Id.* at 75:22.)

Plaintiff has acknowledged that Assistant Principal David deemed the performance of at least two other Randolph teachers, both young and newly hired, to be unsatisfactory.  (*Id.* at 47:7-25, 52:19-53:3, 77:12-24; *see also* David Tr. at 25:10-26:11.)  Another math teacher, younger than Plaintiff and also under David's supervision, received a U rating for his performance in the 2009-2010 academic year.  (Gregory Apostle 2009-2010 Annual Professional Performance Review (Dkt. No. 29-10); *see also* Pl. Tr. at 71:4-5.)  In evaluations of other

---

[2] *See* Samuel G. Freedman, *Where Teachers Sit, Awaiting Their Fates*, N.Y. Times, Oct. 10, 2007, available at http://www.nytimes.com/2007/10/10/education/10education.html?_r=1.

teachers, David and Rubio made similar notes and critiques as in evaluations of Plaintiff's teaching. (David Tr. at 146:19-147:17; Dkt. No. 29-11.)

Plaintiff asserts that some younger teachers were provided with textbooks for their classes earlier than was Plaintiff, and that Plaintiff never received textbooks for one of his classes. (Pl. Tr. at 101:22-25, 128:4-21, 183:21-184:6.) He also asserts that some younger teachers were provided with superior equipment such as electronic "smart boards." (*Id.* at 71:5-13.) Plaintiff further asserts that when he observed other teachers' lessons as instructed by David, those teachers did some of the same things for which he had been criticized. (*Id.* at 71:15-20, 75:22-76:16, 132:22-133:4.) According to Plaintiff, his students were not adequately prepared for the math classes he was assigned to teach. (*Id.* at 127:18-128:1, 130:9-131:8.) He asserts that when he raised that concern with David, she was unresponsive, though she had offered verbal support to another teacher relating to a similar concern. (*Id.* at 130:9-131:8.)

Appended to the amended complaint are Plaintiff's demand to the City of New York, marked received on February 11, 2010; his EEOC charge, dated March 30, 2010; and his right-to-sue letter from the EEOC, dated May 20, 2010. (Dkt. No. 30-1 at 13-20.)

## II.     Standard for Summary Judgment

Summary judgment is appropriate in a case where the evidence, viewed in the light most favorable to the non-moving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Vacold, L.L.C. v. Cerami*, 545 F.3d 114, 121 (2d Cir. 2008).

The moving party bears the burden of showing that there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 321-23 (1986). A fact is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). For there to be a "genuine" dispute about the fact, the evidence must

be such "that a reasonable jury could return a verdict for the nonmoving party." *Id.* In determining whether there is a genuine issue of material fact, the Court must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party. *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004). Where there is no "evidence in the record from which a reasonable inference could be drawn in favor of the non-moving party on a material issue of fact," summary judgment is proper. *Catlin v. Sobol*, 93 F.3d 1112, 1116 (2d Cir. 1996).

The non-moving party can defeat summary judgment by presenting evidence sufficient to create a genuine issue of material fact, though "[m]ere speculation and conjecture [are] insufficient to preclude the granting of the motion." *Harlen Assocs. v. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001). The Second Circuit has "repeatedly noted that 'summary judgment is ordinarily inappropriate where an individual's intent and state of mind are implicated.'" *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir. 1989) (citations omitted); *see also Gladwin v. Pozzi*, 403 F. App'x 603, 604 (2d Cir. 2010) (Courts "should exercise caution in deciding to grant summary judgment in [an employment discrimination] case where the employer's intent is at issue.").

## III.   Discussion

The discussion below addresses, in turn, Plaintiff's claims of age discrimination, retaliation for opposition to age discrimination, hostile work environment, and FMLA retaliation; finally, the discussion addresses Plaintiff's claims brought under 42 U.S.C. § 1983 (other than for hostile work environment) because they are all disposed of for the same reason.

A.      **Age Discrimination**

1.      **ADEA**

The ADEA prohibits employers from discriminating in hiring, discharge, or the setting of "compensation, terms, conditions, or privileges of employment" based upon the age of an employee.  29 U.S.C. § 623(a)(1); *see also Hazen Paper Co. v. Biggins*, 507 U.S. 604, 609 (1993).  The ADEA covers the class of individuals who are over the age of 40, 29 U.S.C. § 631(a), and the evidentiary framework for proving age discrimination under the statute is the same as that for proving discrimination under Title VII.  *See Hollander v. Am. Cyanamid Co.*, 172 F.3d 192, 198 (2d Cir. 1999); *Raskin v. Wyatt Co.*, 125 F.3d 55, 60 (2d Cir. 1997).  Thus, a disparate treatment case like this one calls for the three-step, burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981).

> First, the plaintiff must establish a prima facie case of discrimination.  The burden then shifts to the employer to rebut the prima facie case by providing a legitimate, non-discriminatory reason for its actions.  The plaintiff then has the opportunity to show that the reason offered by the employer was not its true reason, and that age was.

*Hollander*, 172 F.3d at 199.  "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine*, 450 U.S. at 253 (citations omitted).  But to preclude summary judgment, the plaintiff need not prove that the proffered reasons were pretextual; rather, he need only (1) adduce evidence from which a reasonable fact-finder could directly infer that the discriminatory intent more likely motivated the employer than the proffered reason, or (2) show that the proffered explanation is unworthy of credence.  *Burdine*, 450 U.S. at 256; *see also Weiss v. JPMorgan Chase & Co.*, 332 F. App'x 659, 661 (2d Cir. 2009).

A *prima facie* case of age discrimination under the ADEA requires showing (1) that the plaintiff was within the protected age group, (2) that he was qualified for the position held, (3) that he experienced adverse employment action, and (4) that such action occurred under circumstances giving rise to an inference of age discrimination. *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 107 (2d Cir. 2010).

Here, Plaintiff was over forty years old at all times relevant to the complaint. (*See* Compl. ¶ 8; Ans. ¶ 8.) DOE does not argue otherwise. Nor does DOE argue that Plaintiff was not qualified to be a teacher, a job he has held since approximately 1985. (Pl. Tr. at 16:4-6.) However, DOE does argue that Plaintiff fails to satisfy prongs three and four of the *prima facie* case. (Def.'s Br. (Dkt. No. 28) at 12-17.)

### a.    Adverse Employment Action

The Second Circuit has explained that "a plaintiff may suffer an 'adverse employment action' if she endures a 'materially adverse change in the terms and conditions of employment.'" *Richardson v. New York State Dep't of Correctional Serv.*, 180 F.3d 426, 446 (2d Cir. 1999) (citation omitted). "The change in the terms and conditions of employment 'must be more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Valentine v. Standard & Poor's*, 50 F. Supp. 2d 262, 283 (S.D.N.Y. 1999) (Sotomayor, J.). However, deprivation of an opportunity may be sufficient to make an adverse change material. *Id.* (citing *Medwid v. Baker*, 752 F. Supp. 125, 136-37 (S.D.N.Y. 1990)).

Defendant here points to numerous cases holding that negative performance evaluations, reprimands, and disciplinary charges do not, by themselves, constitute adverse employment actions. *See, e.g.*, *id.* ("Negative evaluations alone, without any accompanying adverse result, however, are not cognizable."); *Weeks v. New York State*, 273 F.3d 76, 86 (2d Cir. 2001)

("It hardly needs saying that a criticism of an employee (which is part of training and necessary to allow employees to develop, improve and avoid discipline) is not an adverse employment action." (citation omitted)); *Dauer v. Verizon Communs. Inc.*, 613 F. Supp. 2d 446, 461 (S.D.N.Y. 2009) ("[R]eprimands . . . and excessive scrutiny do not constitute adverse employment actions in the absence of other negative results . . . ." (internal quotation marks and citation omitted)).

However, in *Shapiro v. New York City Dep't of Educ.*, 561 F. Supp. 2d 413 (S.D.N.Y. 2008), the court held that "plaintiffs who received end-of-year U ratings have created a genuine issue of material fact as to whether such a rating constitutes an adverse employment action." *Id.* at 423.  The court based its conclusion on

> evidence that the consequences of a U rating include: (a) being removed from "per session" (*i.e.* extracurricular) paid positions; (b) being barred from applying for per session positions for five years; (c) inability to work in summer school; (d) lost income, including inability to move up a salary step; (e) reduced pension benefits; (f) inability to transfer within the school district; and (g) damaged professional reputations and stymied careers.

*Id.* (citation omitted).  The court concluded that this evidence was sufficient to differentiate the case from others where plaintiffs had failed to show that U ratings resulted in material adverse change.  *Id.*

Plaintiff here has adduced less evidence of material adverse change than the plaintiffs with year-end U ratings in *Shapiro*.  But the evidence that Plaintiff's 2009-2010 U rating precluded him from the opportunity of participating in the Per Session Home Instruction Employment program is sufficient to establish a basis on which a reasonable trier of fact could find a material adverse change.[3]  Thus, for purposes of summary judgment, Plaintiff has satisfied the third prong of a *prima facie* ADEA case.

---

[3] Plaintiff's 2009-2010 U rating is dated June 22, 2010, and his EEOC right to sue letter is dated May 20, 2010.  In a district court ADEA complaint, "a plaintiff typically may raise . . . only those claims that either were included in or

However, Plaintiff's assertions that his supervisors harshly criticized him, subjected him to increased scrutiny, and/or created a hostile work environment would not be sufficient to raise a genuine issue of material fact as to adverse employment action under the ADEA.  A "plaintiff's claim that her work was more closely scrutinized and that she received disciplinary charges are insufficient to state a claim for a hostile work environment." *Osier v. Broome County*, 47 F. Supp. 2d 311, 324 (N.D.N.Y 1999) (Title VII).  And, as discussed further below, to show a hostile work environment under the ADEA, a plaintiff must "demonstrate that his workplace was 'permeated with discriminatory intimidation, ridicule, and insult that [were] sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment.'" *Peterec-Tolino v. Commercial Elec. Contrs., Inc.*, 2011 U.S. Dist. LEXIS 125102, at *20 (S.D.N.Y. Oct. 26, 2011) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (Title VII)).

Plaintiff has adduced no evidence that David or Rubio or any other DOE employee ever made a single discriminatory comment regarding Plaintiff's age or any other characteristic.  His relationship with David may have been unpleasant, but all the harsh comments she is asserted to have made concerned Plaintiff's job performance.  There is no evidence that Plaintiff suffered a work environment pervaded by "discriminatory intimidation, ridicule, [or] insult." *Id.* (concluding that no hostile work environment existed where only a small number of discriminatory comments were made).  Accordingly, Defendant DOE is granted summary

---

are 'reasonably related to' the allegations contained in her EEOC charge." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 82-83 (2d Cir. 2001) (quoting *Butts v. City of New York Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993)). The Second Circuit has recognized three scenarios in which a claim is "reasonably related" to the allegations in an EEOC charge: "[1] the claim would fall within the reasonably expected scope of an EEOC investigation of the charges of discrimination; [2] it alleges retaliation for filing the EEOC charge; or [3] the plaintiff 'alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge.'" *Alfano v. Costello*, 294 F.3d 365, 381 (2d Cir. 2002) (quoting *Butts*, 990 F.2d at 1402-03).  The 2009-2010 U rating, which followed the negative observation evaluations included in the EEOC charge, constitutes another instance of alleged discrimination in precisely the same form (performance evaluation) alleged in the EEOC charge.  As such, evidence of Plaintiff's 2009-2010 U rating is valid to support Plaintiff's ADEA claim.

judgment as to any argument that Plaintiff's supervisors' harsh criticism, increased scrutiny, and/or hostile work environment constituted an adverse employment action against Plaintiff.

Nor would Plaintiff's subsequently reversed 2007-2008 U rating due to excessive absences be sufficient to raise a genuine dispute of material fact as to adverse employment action under the ADEA.  A corrected administrative error without attendant deleterious effect does not constitute an adverse employment action.  *See Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) ("The unspecified inconvenience that appellant endured because of the relatively minor administrative miscues . . . is not cognizable as an adverse employment action.").

Again, Plaintiff here learned of his 2007-2008 U rating in June 2008 and submitted proof of his approved FMLA leave in "September or October or November or December 2008."  (Pl. Tr. at 53:20-23, 55:2-14.)  Principal Rubio reversed the U rating in January 2009 and, in February or March, issued a letter apologizing for the administrative error.  Plaintiff has adduced no evidence that either the erroneous U rating or the minor delay in reversal constituted a material adverse change in his employment conditions.  Accordingly, Defendant DOE is granted summary judgment as to the insufficiency of Plaintiff's 2007-2008 U rating to show adverse employment action.

### b.    Inference of Discrimination

The final prong of a prima facie case of age discrimination under the ADEA is a showing of circumstances giving rise to an inference of discrimination.  *Gorzynski*, 596 F.3d at 107. Often, a plaintiff must rely on "the cumulative weight of circumstantial evidence to make out a *prima facie* case."  *Tarshis v. Riese Org.*, 211 F.3d 30, 36 (2d Cir. 2000) (citation omitted).

> A showing of disparate treatment—that is, a showing that the employer treated plaintiff "less favorably than a similarly situated employee outside his protected group"—is a recognized method of raising an inference of discrimination for

purposes of making out a *prima facie* case. . . .  A plaintiff relying on disparate treatment evidence "must show she was similarly situated in all material respects to the individuals with whom she seeks to compare herself."  . . .  Ordinarily, the question whether two employees are similarly situated is a question of fact for the jury.

*Mandell v. County of Suffolk & John Gallagher*, 316 F.3d 368, 379 (2d Cir. 2003) (citation omitted).

Here, all of Plaintiff's evidence of discrimination is circumstantial.  Plaintiff asserts that other teachers near his age were also treated harshly at Randolph.[4]  He asserts that younger teachers were provided with superior equipment and that their classes were given textbooks at times when those of Plaintiff were not.  He asserts that certain criticisms from his supervisors were false and that he was admonished for doing things that younger teachers did in lessons he was told to observe for training purposes.

DOE argues that Plaintiff was not the subject of disparate treatment and asserts that some younger teachers were criticized and given U ratings at the same time as Plaintiff.  DOE further counters Plaintiff's claim of age discrimination by pointing out that Assistant Principal David is older than Plaintiff.  *See Walder v. White Plains Bd. of Educ.*, 738 F. Supp. 2d 483, 501 (S.D.N.Y. 2010) (collecting cases where courts doubt discrimination where adverse action is taken by a person in the same protected class as the plaintiff).  DOE also points out that Plaintiff received a satisfactory rating from Randolph in the 2008-2009 school year and argues that a recent positive review undermines an inference of discrimination.  *See Ko Sheng Chuang v. T.W. Wang Inc.*, 647 F. Supp. 2d 221, 239 (E.D.N.Y. 2009) ("It is difficult to impute bias against the plaintiff's protected class where the person making the adverse employment decision against plaintiff also made a recent favorable employment decision regarding plaintiff.").

---

[4] It is important to note, however, that "[a]n employee's age is analytically distinct from his years of service.  Thus, seniority is not a sufficiently accurate indicator of age to allow, as a matter of course, a defendant's knowledge of the former to substitute for knowledge of the latter."  *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 85 (2d Cir. 2005) (citation and internal quotation marks omitted).

At this stage, the Court's role is not to weigh evidence and try issues but rather to determine whether there are issues to be tried. *Jaroslawicz v. Seedman*, 528 F.2d 727, 731 (2d Cir. 1975). Accordingly, the Court does not reach whether Plaintiff's evidence is sufficient to *prove* discrimination. For Plaintiff's ADEA discrimination claim to survive this motion for summary judgment, it is enough that Plaintiff evidences a genuine dispute as to an inference of discrimination such "that a reasonable jury could return a verdict for" him. *Anderson*, 477 U.S. at 248. Moreover, inferring discrimination goes to the intent and state of mind of Plaintiff's supervisors and employer, making summary judgment inappropriate except in extraordinary cases. *Ramseur*, 865 F.2d at 465. Thus, Plaintiff has adduced sufficient evidence to present a *prima facie* case for purposes of avoiding summary judgment.

### c.      Legitimate Non-discriminatory Reason and Pretext

A defendant can defeat a *prima facie* case with a showing that it had a "legitimate, non-discriminatory reason" for the adverse employment action allegedly suffered by the plaintiff. *Hollander*, 172 F.3d at 199. The record is replete with evidence that Plaintiff received his 2009-2010 unsatisfactory rating after Assistant Principal David and Principal Rubio repeatedly criticized Plaintiff's teaching. The Court assumes for purposes of this motion that the asserted poor work performance is a legitimate, non-discriminatory reason for a negative performance evaluation.

Hence, the burden shifts back to the plaintiff to show that the defendant's articulated reason is pretextual. *Id.* To prove pretext, a plaintiff must demonstrate "*both* that the [articulated] reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993). However, on a motion for summary judgment, the Second Circuit has "reject[ed] any categorical rule requiring age discrimination plaintiffs to offer, in addition to their *prima facie* case and evidence of pretext, further evidence that age

15

discrimination was the actual motivation in order to satisfy their burden." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 469 (2d Cir. 2001); *see also Weiss v. JPMorgan Chase & Co.*, 332 F. App'x 659, 661 (2d Cir. 2009).

Rather, "[a] plaintiff may show pretext by demonstrating 'such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.'" *Bombero v. Warner-Lambert Co.*, 142 F. Supp. 2d 196, 203 (D. Conn. 2000) (quoting *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1179 (10th Cir. 1999)). Moreover, while "the factual validity of the underlying imputation against the employee is not at issue," evidence of falsified performance reviews "might strengthen a plaintiff's showing of pretext." *McPherson v. New York City Dep't of Educ.*, 457 F.3d 211, 216 & n.7 (2d Cir. 2006).

Plaintiff here has attempted to raise doubts that poor performance was the reason for Plaintiff's negative evaluations. Plaintiff has asserted that some of his supervisors' criticisms of him were factually inaccurate. He further asserts that some of his criticized pedagogical techniques were also practiced by younger teachers whose lessons were selected as models for Plaintiff's teaching. Without judging whether a jury would credit Plaintiff's pretext argument, the Court cannot say that no reasonable jury would find pretext. Further, the question of pretext, like an inference of discrimination, goes to the state of mind of DOE officials, making summary judgment inappropriate except in extraordinary cases. *Ramseur*, 865 F.2d at 465. As such, summary judgment is denied as to the issue of pretext and as to Plaintiff's ADEA claim.

### 2.    NYHRL and NYCHRL

The NYHRL "makes it unlawful for an employer 'to discriminate against [an] individual in promotion, compensation or in terms, conditions, or privileges of employment, because of

such individual's age.'" *Abdu-Brisson*, 239 F.3d at 466 (quoting N.Y. Exec. Law § 296.3-a).

"[A]ge discrimination suits brought under the [NYHRL] . . . are subject to the same analysis as

claims brought under the ADEA." *Id.*

On its face, "[t]he [NYCHRL] prohibits the same conduct [as the NYHRL]. N.Y. City

Admin. Code § 8-107(1)(a)." *Abdu-Brisson*, 239 F.3d at 466. Though the ADEA, NYHRL, and

NYCHRL begin their protection at different ages, Plaintiff here is within the age range for

protection under all of them.[5] And the NYCHRL was once interpreted under the same standards

as Title VII and parallel laws, including the NYHRL. *Id.* However, the New York City Council

enacted the Local Civil Rights Restoration Act of 2005 ("Restoration Act"), N.Y.C. Local Law

No. 85 (2005), which mandates that the NYCHRL be interpreted "independently from and more

liberally than [its] federal and state counterparts." *Loeffler v. Staten Island Univ. Hosp.*, 582

F.3d 268, 278 (2d Cir. 2009) (citation and internal quotation marks omitted).

Still, "[a]lthough claims under the NYCHRL are more liberally construed than claims

under Title VII and the NY[]HRL, the NYCHRL does not alter the kind, quality or nature of

evidence that is necessary to support or defeat a motion for summary judgment under Rule 56."

*Ballard v. Children's Aid Soc'y*, 781 F. Supp. 2d 198, 211 (S.D.N.Y. 2011) (citation and internal

quotation marks omitted).

For the reasons discussed above vis-à-vis Plaintiff's ADEA claim, DOE's motion for

summary judgment is denied as to Plaintiff's NYHRL and NYCHRL age discrimination claims

because Plaintiff has adduced evidence to support a *prima facie* case of age discrimination that

(1) Plaintiff is a member of the relevant protected classes (uncontested by DOE); (2) Plaintiff

was qualified to be a teacher (uncontested by DOE); (3) Plaintiff suffered an adverse

---

[5] "While one must reach the age of forty before falling under the protection of the ADEA, *see* 29 U.S.C. § 631(a), the employment provisions of the State HRL apply to all employees over the age of eighteen, *see* N.Y. Exec. Law § 296(3-a)(a), and the employment provisions of the City HRL do not have any specific age limitation, *see* N.Y. City Admin. Code § 8-107(1)." *Abdu-Brisson*, 239 F.3d at 466 n.3.

employment action in the form of his 2009-2010 U rating; and (4) that adverse employment action arose out of circumstances supporting an inference of discrimination.  These claims survive summary judgment because, although DOE has adduced evidence suggesting it had a legitimate non-discriminatory reason for the 2009-2010 U rating, Plaintiff has adduced evidence raising a genuine dispute as to whether that reason was a pretext for discrimination.  However, DOE's motion for summary judgment is granted with respect to the insufficiency of (1) harsh criticism, increased scrutiny, or a hostile work environment to show an adverse employment action against Plaintiff and (2) Plaintiff's 2007-2008 U rating to show an adverse employment action.

### B.     Retaliation for Opposition to Age Discrimination

#### 1.     ADEA

Plaintiff further alleges that DOE retaliated against him "for engaging in the protected activity of complaining of harassment based on his age and illness in taking medical leave . . . in violation of Title VII."  (Compl. ¶ 58.)  The complaint's invocation of Title VII is misplaced. Title VII prohibits an employer from discriminating against any individual "with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin," 42 U.S.C. §§ 2000e-2(a)(1), and does not cover age discrimination.  *Bornholdt v. Brady*, 869 F.2d 57, 62 (2d. Cir. 1989); *see also Ercole v. U.S. Dep't of Transp.*, No. 07 Civ. 2049, 2008 U.S. Dist. LEXIS 77858, at *18 (E.D.N.Y. Sept. 10, 2008).  Plaintiff has not advanced evidence suggesting discrimination based on any of the characteristics protected by Title VII.  However, the ADEA provides that "[i]t shall be unlawful for an employer to discriminate against any of his employees . . . because such individual . . . has opposed any practice made unlawful by this section . . . ."  29 U.S.C. § 623(d).[6]

---

[6] Plaintiff's FMLA retaliation claim is discussed in Section III(D) of this opinion.

"To establish a *prima facie* case of retaliation [under the ADEA, a plaintiff] must show (1) that she participated in a protected activity, (2) that she suffered an adverse employment action, and (3) that there was a causal connection between her engaging in the protected activity and the adverse employment action." *Gorzynski*, 596 F.3d at 110.  Such claims are also subject to the same *McDonnell Douglas* burden-shifting analysis as similar claims brought pursuant to Title VII. *Terry v. Ashcroft*, 336 F.3d 128, 141 (2d Cir. 2003).  However, the standard for adverse employment actions is broader for retaliation claims than for disparate treatment claims. For retaliation claims, an adverse employment action is any employer action that "could well dissuade a reasonable worker from" exercising his rights under the relevant law. *Hooda v. Brookhaven Sci. Assocs., LLC*, 2011 U.S. Dist. LEXIS 100963, at *17 (E.D.N.Y. Sept. 2, 2011) (citing *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 57 (2006)).

Here, the only protected activity suggested by the admissible evidence is Plaintiff's March 30, 2010 EEOC charge.  There is no evidence that Plaintiff ever complained to school or DOE officials of age discrimination.  After his EEOC charge, Plaintiff suffered an adverse employment action in the form of his 2009-2010 U rating, dated June 22, 2010.  The temporal proximity of the EEOC charge and the U rating is sufficient to create a triable issue as to a causal connection between them. *El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010).

As with Plaintiff's ADEA disparate treatment claim, DOE's proffered legitimate, non-discriminatory reason for the 2009-2010 U rating (Plaintiff's poor job performance) is sufficient to shift the burden back to Plaintiff to adduce evidence of pretext.

For this ADEA retaliation claim to survive summary judgment, Plaintiff need only show a genuine dispute of material fact as to whether Plaintiff's work performance was the true reason for his 2009-2010 U rating.  The basis for the U rating was the numerous observations of Plaintiff's teaching by David and, on one occasion, Rubio.  Thus, to create a genuine issue of

pretext as to the U rating, Plaintiff would need to adduce evidence casting doubt on the motivations behind David and Rubio's criticisms of him *that came after his EEOC charge*. Three observations of Plaintiff's teaching occurred after his EEOC charge: on April 19, 2010; May 7, 2010; and June 8, 2010.  The only evidence adduced suggesting that the criticisms following those observations were objectively false is Plaintiff's testimony of the following: that Plaintiff does not recall a student eating potato chips in his class on April 19, 2010 (Pl. Tr. at 154:20-155:2); that Plaintiff does not recall "a student on a cell phone" on April 19, 2010 (*id.* at 155:3-5); that, with regard to David's comment that Plaintiff asked questions of the same students repeatedly on May 7, 2010, Plaintiff "wouldn't say that" and that he "would call all students" (*id.* at 167:22-23); and that Plaintiff disagrees that the majority of his questions on May 7, 2010, were procedural (*id.* at 169:22-24).

Although the totality of Plaintiff's pretext evidence is enough to sustain his ADEA discrimination claim, the evidence of pretext *after Plaintiff's EEOC charge* is insufficient to raise a triable issue as to DOE's proffered reason for Plaintiff's 2009-2010 U rating in the context of Plaintiff's ADEA retaliation claim.  Though summary judgment is typically inappropriate where intent is implicated, the evidence adduced by Plaintiff is too weak to "implicate" the intent of DOE's officials.  *Cf. Jensen v. Garlock, Inc.*, 4 F. Supp. 2d 219, 223 (W.D.N.Y. 1998) ("In the face of [employer's] amply supported credible explanation, [plaintiff's] *prima facie* evidence simply is not strong enough to put [employer's] intent 'genuinely in issue.'") (citing *Chambers v. TRM Copy Centers Corp.*, 43 F.3d 29, 40 (2d Cir. 1994)).

Accordingly, DOE's motion for summary judgment is granted as to Plaintiff's ADEA retaliation claim.

### 2.    NYHRL

The standards which apply to Title VII and ADEA retaliation claims generally govern retaliation claims under the NYHRL as well.  *Schiano v. Quality Payroll Systems, Inc.*, 445 F.3d 597, 609 (2d Cir. 2006).  Accordingly, DOE's motion for summary judgment is granted as to Plaintiff's NYHRL retaliation claim arising out of opposition to age discrimination.

### 3.    NYCHRL

The NYCHRL does not require a plaintiff to show an "adverse employment action," but only some act that was "reasonably likely to deter a person from engaging in protected activity." N.Y.C. Admin. Code § 8-107(7).  And again, "[a]lthough claims under the NYCHRL are more liberally construed than claims under Title VII and the NY[]HRL, the NYCHRL does not alter the kind, quality or nature of evidence that is necessary to support or defeat a motion for summary judgment under Rule 56."  *Ballard*, 781 F. Supp. 2d at 211 (citation and internal quotation marks omitted).

As with Plaintiff's ADEA retaliation claim, no evidence creates a triable issue of pretext as to DOE's legitimate non-discriminatory reason for Plaintiff's 2009-2010 U rating and the relevant criticism he received from supervisors.  Accordingly, DOE's motion for summary judgment is granted as to Plaintiff's retaliation claim under the NYCHRL.

### C.    Hostile Work Environment

### 1.    ADEA

Plaintiff has also alleged that DOE discriminated against him "because of his age and illness in taking a medical leave, in that he was subject to a hostile work environment . . . in violation of Title VII."  (Compl. ¶¶ 50-59.)  As with his ADEA retaliation claim, Plaintiff's reliance on Title VII here is misplaced.  However, a hostile work environment claim may also be

raised under the ADEA, and "[t]he same standards apply to hostile work environment claims brought under the ADEA" as under Title VII. *Terry*, 336 F.3d at 148.

"A nasty, unpleasant workplace is not a hostile work environment for purposes of" the ADEA. *Hammond v. Zurich Am. Ins. Co.*, 2010 U.S. Dist. LEXIS 83183, at *16 (E.D.N.Y. Aug. 12, 2010) (Title VII and NYHRL). To prove a claim for hostile work environment, a plaintiff must show that the "workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2001); *accord Fincher v. Depository Trust & Clearing Corp.*, 604 F.3d 712, 723-24 (2d Cir. 2010). Discriminatory incidents must be more than "episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Alfano*, 294 F.3d at 374 (citation and internal quotation marks omitted).

"To decide whether the threshold has been reached, courts examine the case-specific circumstances in their totality and evaluate the severity, frequency, and degree of the abuse." *Id.* The Supreme Court has listed the relevant factors for analyzing a hostile work environment claim as including "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. The Second Circuit has explained that "[s]imple teasing, offhand comments, or isolated incidents of offensive conduct (unless extremely serious) will not support a claim of discriminatory harassment." *Petrosino v. Bell Atl.*, 385 F.3d 210, 223 (2d Cir. 2004).

A plaintiff must also show "a specific basis for imputing the conduct creating the hostile work environment to the employer." *Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004) (citation omitted). The plaintiff must show that the employer "either provided no reasonable avenue for complaint or knew of the harassment but did nothing about it." *Van Zant v. KLM*

*Royal Dutch Airlines*, 80 F.3d 708, 715 (2d Cir. 1996) (citation and internal quotation marks omitted).

Plaintiff has not alleged or adduced evidence of any instances of discriminatory workplace hostility. Plaintiff testified that certain of David's comments to him were "unsupportive," "harsh, demeaning, and unexpected," "in a [sic] angry, vicious tone," "loud," and "hostile." (Pl. Tr. at 44:14-15, 52:7-8, 115:13-14). Neither this evidence nor any other adduced evidence suggests any "discriminatory intimidation, ridicule, [or] insult." In his deposition, Plaintiff was asked whether Assistant Principal David "ever sa[id] anything with respect to this observation or her observation of your teaching, that made reference to your age, or to your having taken F.M.L.A. leave?" (Pl. Tr. at 135:1-4.) Plaintiff answered, "No." (*Id.* at 135:5.)

And while Plaintiff has presented evidence that other teachers near him in age experienced difficulty at Randolph, no evidence suggests that these other teachers were subject to harsh or hostile criticism similar to what Plaintiff alleges. In his deposition, Plaintiff was asked "[w]as there any other teachers [sic] who [you] either spoke with or observed being on the receiving end of any of these statements by Miss David, that were angry or vicious?" (*Id.* at 52:16-18.) Plaintiff answered, "I can't say one hundred percent for sure, but I know . . . she was not satisfied with Mr. Schneider, and she was not satisfied with Mr. Schmedberg." (*Id.* at 52:19-23.)

The adduced evidence does not provide a sufficient basis for any reasonable fact-finder to determine that David's harsh comments to Plaintiff contained "discriminatory intimidation, ridicule, and insult" on the basis of age. Plaintiff has failed to satisfy the first requirement of a hostile work environment claim; thus the Court need not consider whether the harshness that Plaintiff complains of was so pervasive as to alter his terms of employment or whether that

harshness can be imputed to his employer. Accordingly, DOE's motion for summary judgment is granted as to Plaintiff's ADEA hostile work environment claim.

### 2.    NYHRL and 42 U.S.C. § 1983

Like hostile work environment claims under the ADEA, similar claims under the NYHRL and 42 U.S.C. § 1983 are analyzed under the same standards as under Title VII. *Pucino v. Verizon Communs., Inc.*, 618 F.3d 112, 117 n.2 (2d Cir. 2010); *Demoret v. Zegarelli*, 451 F.3d 140, 149 (2d Cir. 2006). Accordingly, and for the same reasons discussed above vis-à-vis Plaintiff's ADEA hostile work environment claim, DOE's motion for summary judgment is granted as to Plaintiff's claims of a hostile work environment under the NYHRL and 42 U.S.C. § 1983.[7]

### 3.    NYCHRL

Some courts have held that the NYCHRL does not require a plaintiff to demonstrate that hostile workplace treatment was "severe or pervasive." *Birkholz v. City of New York*, 2012 U.S. Dist. LEXIS 22445, at *25-33 (E.D.N.Y. Feb. 17, 2012); *see also Williams v. New York City Hous. Auth.*, 61 A.D.3d 62, 76 (N.Y. App. Div. 2009). But again, "[a]lthough claims under the NYCHRL are more liberally construed than claims under Title VII and the NY[S]HRL, the NYCHRL does not alter the kind, quality or nature of evidence that is necessary to support or defeat a motion for summary judgment under Rule 56." *Ballard*, 781 F. Supp. 2d at 211 (citation and internal quotation marks omitted).

Here, since Plaintiff fails to adduce any evidence of discriminatory intent in the unpleasant conduct alleged, DOE's motion for summary judgment is also granted as to Plaintiff's claim of a hostile work environment under the NYCHRL.

---

[7] Because Plaintiff's § 1983 hostile work environment claim will be dismissed for the reasons discussed above, the Court need not analyze whether Plaintiff satisfied other requirements for this type of claim such as adducing evidence of a municipal policy or custom pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

D.      **FMLA Retaliation**

The FMLA states that "it shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this title."  29 U.S.C. § 2615(a)(1).  Regulations promulgated pursuant to the FMLA explain that employers are prohibited from discriminating against employees who have used FMLA leave.  29 C.F.R. § 825.220(c).

In the Second Circuit, FMLA retaliation claims are analyzed under the same *McDonnell Douglas* standards as Title VII retaliation claims.  *Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004).  To make out a *prima facie* case of FMLA retaliation, a plaintiff "must establish that: 1) he exercised rights protected under the FMLA; 2) he was qualified for his position; 3) he suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent."  *Id.*  Again, for retaliation claims, an adverse employment action is any employer action "harmful to the point that [it] could well dissuade a reasonable worker" from exercising his rights under the relevant law.  *Behringer v. Lavelle School for the Blind*, 2010 WL 5158644, at *15 (S.D.N.Y. Dec. 17, 2010) (citing *Ragusa v. Malverne Union Free Sch. Dist.*, 381 F. App'x 85, 90 (2d Cir. 2010).

And again, demonstrating triable issues as to the elements of a *prima facie* case shifts the burden to the defendant to show a legitimate non-discriminatory reason for the adverse employment action.  *McDonnell Douglas Corp.*, 411 U.S. 792.  The burden then shifts back to the plaintiff to create a triable issue as to whether the proffered reason is a pretext for discrimination.  *Id.*

It is undisputed that Plaintiff took a leave of absence pursuant to the FMLA.  (Pl. Tr. at 29:7-24, 48:3-50:16; DOE FMLA Approval (Dkt. No. 35-1 at 71); Def.'s Local Rule 56.1 Statement (Dkt. No. 31) ¶ 20.)  Nor does Defendant dispute that Plaintiff was qualified to be a

teacher.  Defendant does dispute that Plaintiff suffered an adverse employment action.  However, as discussed above, Plaintiff's 2009-2010 U rating may constitute an adverse employment action.  And under the broader *Burlington Northern* standard, Plaintiff's 2007-2008 U rating (even though it was ultimately reversed) and the negative performance reviews Plaintiff received between his FMLA leave and the 2009-2010 U rating may also constitute actions that could dissuade an employee from exercising rights under the FMLA.

Defendant further disputes that any of those acts occurred under circumstances giving rise to an inference of retaliatory intent.

Plaintiff's 2007-2008 U rating was, on its face, imposed due to Plaintiff's excessive absences during the school year.  (Pl. Tr. at 54:12-13; Def.'s Local Rule 56.1 Statement ¶ 21.) After Plaintiff submitted, sometime between September and December 2008, documentation of DOE's approval of his leave, Principal Rubio reversed Plaintiff's 2007-2008 U rating in January 2009 and, in February or March 2009, provided Plaintiff a letter apologizing for the administrative error.  The temporal proximity to Plaintiff's leave and the stated reason for the U rating could form a strong basis for an FMLA retaliation claim were they not followed by Rubio's reversal and apology.  Still, a rational fact-finder could determine that this first U rating was intended as retaliation for Plaintiff's leave and reversed only to avoid liability.  A fact-finder that credits that U rating as motivated by retaliation for Plaintiff's FMLA leave may then find that the same retaliatory state of mind motivated the acts that followed: Assistant Principal David's harsh comments to Plaintiff, the negative evaluations of Plaintiff's work performance, and ultimately his 2009-2010 U rating.  Accordingly, Plaintiff has succeeded in adducing evidence to support a *prima facie* case of FMLA retaliation sufficient to survive a motion for summary judgment.

DOE has asserted legitimate non-discriminatory reasons for all of the adverse employment actions on which Plaintiff could seek judgment under the FMLA: administrative error for the 2007-2008 U rating and poor work performance for negative comments and evaluations.

As discussed above, Plaintiff has attempted to raise doubts that poor performance was the reason for Plaintiff's negative evaluations.  Plaintiff has asserted that some of his supervisors' criticisms of him were factually inaccurate and that others (to which Plaintiff admits) applied equally to younger teachers whose lessons he was told to observe for training purposes.  As with Plaintiff's ADEA claim, the Court cannot say that no reasonable jury would find pretext as to the negative evaluations based on Plaintiff's assertions.  Plaintiff has sufficiently asserted "such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons."  *Bombero*, 142 F. Supp. 2d at 203 (citation and internal quotation marks omitted).

The factual inaccuracies that Plaintiff alleges concerning his performance evaluations do not relate directly to pretext as to his 2007-2008 U rating.  However, evidence that causes a fact-finder to doubt DOE officials' motives in negatively evaluating Plaintiff may also cause a fact-finder to doubt the legitimate non-discriminatory reasons DOE has proffered for all of its adverse employment actions against Plaintiff.  Whether Plaintiff can show at trial that DOE had unlawful retaliatory intent in assigning the 2007-2008 U rating is a question for the fact-finder, but on summary judgment, again, the Court must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party.  *Sec. Ins. Co. of Hartford*, 391 F.3d at 83.

Further, the question of pretext, like an inference of discrimination, goes to the state of mind of DOE officials.  For these reasons, genuine issues of material fact preclude summary judgment as to pretext with respect to Plaintiff's FMLA retaliation claim.

Accordingly, summary judgment is denied as to Plaintiff's claim of retaliation under the FMLA.

### E.        Further Claims Pursuant to 42 U.S.C. § 1983

In addition to the hostile work environment claim discussed above, the amended complaint appears to assert claims under 42 U.S.C. § 1983 alleging age discrimination, retaliation for opposition to age discrimination, and retaliation for illness in taking medical leave. (Compl. ¶¶ 48-58.)  To sustain any § 1983 claim against a municipality, a plaintiff must show, pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), that a municipal "organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation."  *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006).  At the same time, "municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances."  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986); *see also St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) (noting that the Supreme Court has "assumed that an unconstitutional governmental policy could be inferred from a single decision taken by the highest officials responsible for setting policy in that area of the government's business").

Plaintiff adduces no evidence of practices or policies at a level higher than Randolph's principal who issued Plaintiff's U ratings.  Accordingly, it is necessary to determine whether a New York school principal is a final policymaker with regard to teacher evaluations.

"[I]dentification of policymaking officials is a question of state law."  *Id.* at 124.  The Supreme Court has explained that, in § 1983 cases against municipalities,

28

[t]he official must . . . be responsible for establishing final government policy respecting such activity before the municipality can be held liable.  Authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority . . . . [M]unicipal liability under § 1983 attaches where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.

*Pembaur*, 475 U.S. at 482-83 (citation omitted).

In New York, state law has established the office of chancellor to oversee New York City schools.  N.Y. Educ. Law § 2590-h (Consol. 2012) ("The chancellor shall . . . Control and operate: (a) academic and vocational senior high schools . . . .").[8]  The law further provides that principals must lead schools "*[s]ubject to the regulations of the chancellor*."  N.Y. Educ. Law § 2590-i (Consol. 2012) (emphasis added).

New York's state-level law does not address teacher evaluations specifically, but the DOE chancellor has promulgated regulations governing teacher evaluations, mandating that "[i]n arriving at [a teacher's] rating for a school year, the Rating Officer should take into account all events and incidents manifesting professional growth, pupil guidance and instruction, and classroom management."  *Budnick v. New York City Dep't of Educ.*, 25 Misc. 3d 1235A, at *3 (N.Y. Sup. Ct. 2009) (citing DOE Division of Human Resources, Rating Pedagogical Staff Members, Section, II, C, at 4).  Included on the DOE year-end review form signed by Principal Rubio in 2010 is a notice that "[f]or an appeal of an adverse evaluation . . . [a]ppeal must be made in writing to the Director, Office of Appeals & Reviews . . . ."  (2009-2010 Annual Professional Performance Review (Dkt. No. 29-9) at 2.)

---

[8] Though state law enumerates the powers of the chancellor, the New York City Department of Education is a part of city government and, therefore, not shielded by sovereign immunity pursuant to the Eleventh Amendment.  *See, e.g.*, *M.M. v. New York City Dep't of Educ.*, 2010 U.S. Dist. LEXIS 75127 (S.D.N.Y. July 27, 2010) (dismissing claims against state defendants as barred by the Eleventh Amendment but dismissing claims against the New York City DOE for other reasons).  Accordingly, suits against DOE are not controlled by cases holding that the Eleventh Amendment limits the applicability to states of certain federal laws.  *See, e.g.*, *Edelman v. Jordan*, 415 U.S. 651 (1974) (42 U.S.C. § 1983); *Coleman v. Court of Appeals of Md.*, 566 U.S. ___ (2012) (FMLA self-care provision); *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62 (2000) (ADEA).

Thus, with regard to teacher evaluations, the chancellor appears to be the final policymaker.  Principals and any other rating officers are bound to follow the chancellor's regulations in rating teacher performances.  New York law does not make principals "responsible for establishing final government policy respecting" teacher evaluations, *Pembaur*, 475 U.S. at 483, nor has the chancellor delegated such responsibility to principals.  A principal's teacher evaluation deviating from the chancellor's regulations is subject to reversal; as such, a principal's evaluations are neither policy nor final.

Other district court decisions in this Circuit have disagreed on whether a principal is a final policymaker.  A line of cases concluding that a principal is such an official began with *Rabideau v. Beekmantown Cent. Sch. Dist.*, 89 F. Supp. 2d 263 (N.D.N.Y 2000).  These cases "have found that a public school principal acts as a final policymaker to the extent that the ultimate harm that befell the plaintiff was under the principal's control."  *Zambrano-Lamhaouhi v. New York City Bd. of Educ.*, 2011 U.S. Dist. LEXIS 133863, at *67-68 (E.D.N.Y. Nov. 17, 2011).

In *Zambrano-Lamhaouhi* itself, however, the court found that a principal was not a final policymaker with respect to a teacher's demotion (which followed a negative evaluation) because a superintendent held final authority over demotions.  *Id.*; *see also Moore v. City of New York*, 2010 U.S. Dist. LEXIS 19183, at *18-19 (S.D.N.Y. Mar. 1, 2010) (concluding that school-level officials were not final policymakers because New York education laws "grant policy making authority over New York City schools to the Chancellor").  Moreover, *Rabideau* concerned a school's treatment of a disabled student, and neither that case nor any of its progeny concerned teacher evaluations.[9]  Thus, the reasoning in those cases is not directly applicable to

---

[9] *Rabideau*'s progeny, which cite only *Rabideau* and each other regarding a principal's final policymaking authority, include: *T.Z. v. City of New York*, 635 F. Supp. 2d 152 (E.D.N.Y. 2009) (suit for municipal liability for student-on-student sexual assault); *Williams v. Bd. of Educ.—Buffalo*, 2008 U.S. Dist. LEXIS 58510 (W.D.N.Y. July 24, 2008)

the instant case.  *See Jeffes v. Barnes*, 208 F.3d 49, 57 (2d Cir. 2000) (A final policymaker "need not be a municipal policymaker for all purposes.").

     *Rabideau*'s conclusion that the school principal was a final policymaker ultimately relied on *Luce v. Board of Education*, 2 A.D.2d 502 (N.Y. App. Div. 1956).  *Luce*, however, established merely that a municipality, in the form of its Board of Education, would not be liable for failing to meet duties not imposed on it by law.  *Id.* at 505-06.  The court there reasoned that "[i]t would be entirely impossible for a board of education to adopt and enforce rules which would cover every detail of activity and every individual situation which might arise. . . .  [I]t seems clear that the Legislature . . . intended to impose only general duties upon the board . . . ."  *Id.* at 505.  While this language suggests that, at least under the laws in force in 1956, principals and other school-level officials may make policy in certain areas, *Luce* does not address instances where senior-level officials *do* adopt policies and instruct lower-level officials to follow those policies.  Hence, *Luce* does not control this case or undermine the conclusion that, at least in the area of teacher evaluations, a school's principal is not a final policymaker.

     Plaintiff does not adduce evidence of any department-level policy.  Because a principal is not a final policymaker when making an appealable school-level decision subject to the chancellor's regulations, Plaintiff has failed to adduce any evidence of a policy that would make DOE liable under *Monell* for the claims discussed in this section.  Accordingly, DOE's motion for summary judgment is granted with respect to all of Plaintiff's remaining claims brought pursuant to 42 U.S.C. § 1983.

## IV.   Conclusion

     For the reasons stated above, Defendant DOE's motion for summary judgment is GRANTED as to (1) whether DOE officials' alleged harshness, increased scrutiny, or hostile

---

(suit alleging harassment by principal); *Lovell v. Comsewogue Sch. Dist.*, 214 F. Supp. 2d 319 (E.D.N.Y. 2002) (suit alleging that principal failed to act on students' harassing of lesbian teacher).

work environment constituted an adverse employment action sufficient to sustain any of Plaintiff's claims of age discrimination under the ADEA, NYHRL, and NYCHRL; (2) whether Plaintiff's 2007-2008 U rating constituted an adverse employment action sufficient to sustain any of Plaintiff's claims of age discrimination under the ADEA, NYHRL, and NYCHRL; (3) Plaintiff's claims of retaliation for opposition to age discrimination under the ADEA, NYHRL, NYCHRL, and Title VII; (4) Plaintiff's hostile work environment claims under the ADEA, NYHRL, NYCHRL, Title VII, and 42 U.S.C. § 1983; and (5) all of Plaintiff's other claims under 42 U.S.C. § 1983.

Defendant DOE's motion for summary judgment is DENIED in all other respects.

**The Clerk of Court is directed to close the motion at docket entry number 27.**

SO ORDERED.

Dated: New York, New York
        March 28, 2012

_____
J. PAUL OETKEN
United States District Judge